Dyer *v.* Tilton.

ALANSON DYER *v.* JOHN A. TILTON.

*Fraudulent representations.*

An action of trespass on the case cannot be sustained for false and fraudulent representations made by the defendant in reference to his own pecuniary responsibility and circumstances, whereby the plaintiff was induced to sell him property upon credit.

TRESPASS ON THE CASE. The plaintiff alleged, in the first count in his declaration, that he was an inn-keeper, and was requested by the defendant to board him and his family; that the plaintiff, being ignorant of the circumstances of the defendant, applied to him for information in reference thereto, and the defendant falsely and fraudulently represented to the plaintiff, that he was possessed and the owner of a bank bill for $100,00, and of another bank bill for $20,00, and that one Pratt was indebted to him, and that he could at any time obtain the money from Pratt to pay the plaintiff for the board; that the plaintiff, relying upon the truth of these representations, did furnish board for the defendant and his family, upon credit; that in truth the defendant was not possessed of the bank bills mentioned by him, and neither Pratt nor any other person was indebted to him, but he was then insolvent,—all which was well known to him; and that the defendant never paid for the board, so furnished to him and his family by the plaintiff. In the second count in the declaration it was alleged, that the defendant, by like false and fraudulent representations as to his property, had induced the plaintiff to sell and deliver to him a pair of boots, of the value of $5,50, upon credit, —the defendant being in fact insolvent,—and that he had never paid for them. Plea, the general issue, and trial by jury, September Term, 1849,—HALL, J., presiding.

The plaintiff gave evidence tending to prove, that the defendant and his family commenced boarding with the plaintiff, who was an innkeeper, without any inquiry being made as to his responsibility; that after he had so boarded for about three weeks, the plaintiff asked the defendant to change a $5,00 bill, when the defendant answered, that he had no money smaller than a $100,00 bill and a $20,00 bill; that he was again called upon in the same manner and

XXIII. 40

for the same purpose, and made the same answer; that after he had thus boarded for about a month, the plaintiff called upon him for pay for his board, and he then said, that he had no smaller money, than before stated, and did not like to change the bills, but that the rail road contractor, for whom he was laboring, was owing him for work, and he would get the pay soon and pay his board bill; that he continued to board with the plaintiff about two months, amounting to about $30,00, and then left and removed his baggage; that, soon afterwards, he was again called upon by the plaintiff for payment, and made answer, that he did not wish to break his large bills, which he wished to keep for pocket pieces, and that he had not drawn his pay of the rail road contractor, but would soon, and pay his bill; and that the plaintiff thereupon called upon the rail road contractor, who informed him, that he had fully paid the defendant for his services. The plaintiff also called as a witness his agent, who had charge of his business, who testified, that he should not have suffered the defendant to continue boarding, or to have removed his baggage, but for his supposition, that the defendant had those large bank bills.

The testimony on the part of the plaintiff also tended to show, in support of the second count in the declaration, that while the defendant was so boarding with the plaintiff, the plaintiff was engaged in the shoe making business, and the defendant, in the presence of an agent of the plaintiff in that business, spoke of, and showed to other persons present, the large bank bills, as he called them, above mentioned; and that he soon afterwards called upon the same agent, to purchase a pair of thin boots, and, after selecting the boots, offered in payment a $10 bill, or what purported to be one,—which the agent was not able to change; whereupon the defendant said he would pay for the boots in a few days, and spoke of his large bank bills, above mentioned; and the agent permitted the defendant to take away the boots,—which were worth $5,50. The testimony of the agent tended to show, that his inducement to give the defendant credit for the boots, was, that the defendant was boarding with the plaintiff on credit, and the supposition of the agent, that the defendant had the said large bank bills.

The plaintiff farther proved, that he had commenced a suit against the defendant for the board and boots, and had attached the defend-

Dyer *v.* Tilton.

ant's body therein, and had recovered judgment against the defendant, in that suit, for $40,60 damages, and that the defendant had taken the benefit of the poor debtor's oath in discharge of his body upon the process; and that the defendant testified, upon the occasion of his taking the poor debtor's oath, that he had not and never had possessed a $100 bill, or a $20 bill,—that the bills, of which he had spoken, and which he had exhibited, as above mentioned, were not bank bills, but only certain city advertisements,—and that he then exhibited the pretended $100 bill, which was a notice, printed on bill paper ; and that the judgment had never been paid.

The defendant insisted, that, upon the declaration and evidence, the plaintiff was not entitled to recover; that no such action could be maintained; that the judgment in favor of the plaintiff against the defendant was a bar to the plaintiff's action in this form; and that, if the action could be maintained at all, there was no evidence to support the first count in the declaration; and requested the court so to instruct the jury.

But the court decided, that the action was maintainable, and instructed the jury, that if they believed, that the defendant, for the purpose of inducing the plaintiff to give him credit for board, represented to the plaintiff, that he was possessed of a $100 bill and a $20 bill of current money, and that the plaintiff was thereby induced to continue boarding the defendant and his family, and the defendant at the time knew the representations to be false, they might render a verdict for the plaintiff upon the first count; and if they believed, that the defendant exhibited in presence of the plaintiff's agent, having charge of his shoe making business, a fictitious $100 bill and $20 bill, as true and current bills, knowing them to be fictitious, for the purpose of obtaining credit for the boots, and, in consequence thereof, did obtain such credit, the plaintiff might recover on the second count; but that, in order to entitle the plaintiff to recover, they must find, that the credit would not have been given to the defendant, but for such false representations in regard to said bills.   The court also instructed the jury, that, in giving damages, they were not necessarily restricted to the amount of the credit obtained, but they might give the plaintiff the actual damages, which they believed, from the evidence, he had sustained, although it might exceed the amount of such credit.

Verdict for plaintiff, for $45,00 damages. Exceptions by defendant.

After verdict the defendant moved in arrest of judgment for the insufficiency of the declaration; which motion was overruled by the court;—to which decision the defendant also excepted.

*R. R. Thrall* and *W. H. Smith* for defendant.

This action is without precedent to sustain it. This may not be conclusive against the action; but when the like occasion appears to have existed for ages, and no adjudged case is found, this forms a strong presumptive argument against the action. 1 Chit. Pl. 109. The action for deceit lies only when it is shown, that the defendant has committed a *fraud,* from which a damage has resulted to the plaintiff. The rule is not general, that, when fraud and damage concur, an action is maintainable; but fraud, to give the action, must consist in depriving the plaintiff, by deceitful means, of some benefit, which the law entitled him to demand, or expect. 2 Stark. Ev. 467. The plaintiff was deprived of no benefit by the defendant's representations proved; and the plaintiff had no legal right to demand or expect any benefit from the inducements made to give the representations. There was no *fraud* on the part of the defendant. A person's representations of his own pecuniary circumstances are not the subject of fraud. To constitute a fraud, means must be resorted to, calculated to deceive an ordinarily prudent man, and this in a matter, in which the party deceived had a right to expect impartiality in his informant, and a legal right to confide in and act upon the representations given. If the means of correct information are at hand, or attainable by ordinary vigilance, the action for deceit cannot be supported. 2 Stark. Ev. 467, 470. *Fisher* v. *Brown,* 1 Tyl. 387. *Starr* v. *Bennett,* 5 Hill 303. *Williams* v. *Hicks,* 2 Vt. 36. *Otis* v. *Raymond,* 3 Conn. 413. The leading case of *Pasley* v. *Freeman* is no authority for the plaintiff in this case. The judgment should have been arrested. The plaintiff, by pursuing the defendant to judgment for his indebtedness, made his election of his remedy, and affirmed the contract, as such, and that barred any remedy by this action. Chit. on Cont. 322, n. (1.) *Ferguson* v. *Carrington,* 9 B. & C. 59. 1 Chit. Pl. 242. *Eddy* v. *Stafford,* 18 Vt. 237.

Dyer *v.* Tilton.

*E. Edgerton* for plaintiff.

The case shows, that both the board and the boots were obtained by the defendant, and the credit for them given by the plaintiff, in consequence of the defendant's false and fraudulent representations as to his means and ability to pay. An action on the case lies for the deceit. *Pasley* v. *Freeman,* 3 T. R. 51. *Fitzsimmons* v. *Joslin,* 21 Vt. 129.

The present suit is not barred by the recovery in the action upon book account. 1. The plaintiff did not discover the fraud, until after the judgment was rendered in that suit, when the defendant first disclosed it in order to relieve his body from imprisonment for the debt. 2. The fraud was not merged in the judgment. The very nature of the case implies the existence of a contract, under which the goods and the board were furnished, and a failure to perform on the part of the defendant. The important fact is, that the debt was created by means of the fraud and remains unpaid. 1 Stark. Ev. 1242. 19 Johns. 164.

BY THE COURT. This is a question, no doubt, of great practical importance,—surely so, if the action were to be adopted. For it would, in effect, open the field to subject almost every debtor, who failed to pay his debt, to an action of deceit and a close jail execution. And the temptation, which the allowing such a remedy would afford to disappointed creditors to convert all matters of contract into torts for the purpose of obtaining more effectual redress, would and we think ought to induce us to proceed with extreme caution. The consideration, too, that no precedent for any such case can be found, induces us to feel, that it would not be prudent for the first time now to give such a remedy.

It is no doubt well settled, that, if one obtain possession of goods under color of sale, by fraud, the vendor may elect to avoid the sale and recover his goods; yet that is as far as the cases have yet gone, and we are not prepared to be the first to advance. Although the principles laid down in *Pasley* v. *Freeman* do in some sense seem, in general terms, to include a case like the present, yet in fact we know they have never been so understood. For if they had, such actions must have been frequent. And there is an essential difference in the character of the fraud implied in the two cases.

We do not rely upon a person's representations in regard to himself, especially as to his pecuniary credit, as we do upon those of third persons. It is a subject, upon which men judge very poorly,—upon none more so, perhaps; and it is not ordinarily considered, that one is bound to the same fullness, in discovering his last resources, that he is upon other subjects.

The testimony in this case will illustrate very fairly the grounds, upon which such actions are likely to be maintained, if they are allowed. The defendant was never inquired of as to his means of payment, and, if he had been, very likely he would not have told even a point blank lie. The judgment, too, *it seems to us,* has effectually merged whatever cause of action the plaintiff had.

The case labors under some extraneous disadvantages, beyond what attaches to its inherent character. 1. It is altogether novel in its impression. This of itself, when the state of facts has always been familiar, is a serious obstacle. But this may be, to some extent, explained by the consideration, that until very recently, and now, even, in most of the states, a judgment in contract is as available as one in tort. 2. The testimony in this case shows nothing more than the ordinary evasions, to which men always do and may be expected to resort, when reluctant to disclose the state of their property; and the plaintiff must have been a man accustomed chiefly to old fashioned honesty, to have been misled by it. 3. *The plaintiff here made his election to treat the matter as a contract,* and actually took judgment in that form, which, in every view of the case, must be esteemed a merger of the cause of action, and, as such, not necessary to be pleaded specially as an estoppel; but, having absorbed the cause of action, it is but an equitable defence, and might well be given in evidence under the general issue, in assumpsit. It is impossible to say, that, when one has an election of remedies for the same cause, and takes judgment in one form, he can then pursue the other against the same person, and thus have two judgments, at the same time, for the same cause of action, against the same person. 4. The small amount involved in the suit, and the serious consequences, which must ensue from establishing such a new remedy, lay the case under very serious disadvantages. If it were not for these considerations, we might be inclined to think, that the general

principles, upon which such a remedy is asked, have been substantially recognized, in other cases.

But as the plaintiff did prove his declaration, and the defendant thought proper to plead the general issue, instead of demurring, we ought not, we think, to deprive the plaintiff of the benefit of his verdict,—which was correct, we think, upon the issue joined.

But as the declaration was insufficient to found any judgment upon, the judgment of the county court is reversed and judgment arrested.