STATE OF MAINE *vs.* ROCCO NAVARRO.

Cumberland.      Opinion, November 12, 1932.

*Walter M. Tapley, Jr.,* for the State.
*Berman and Berman,* for the respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J. The respondent was tried and convicted upon an indictment under a statute which provided as follows:

"Whoever forcibly rescues a prisoner lawfully detained for any criminal offense; . . . or in any way aids him to escape, . . . or with a design to aid the prisoner in his escape, harbors; or with such design in any way assists such prisoner who has escaped, or is at large, shall be punished, . . ." R. S., Chap. 133, Sec. 17.

The indictment alleged that the respondent, at Portland, on the fifteenth day of April, A.D. 1932, "did feloniously aid and assist John J. O'Donnell and Emery Leo to escape and go at large, said John J. O'Donnell and said Emery Leo being then and there prisoners who had escaped from lawful imprisonment in the Cumberland County Jail, said O'Donnell and Leo being lawfully detained upon an appeal to the Law Court, from the sentence of Arthur Chapman, Judge of the Superior Court, for the offense of robbery, which offense was within the jurisdiction of said Superior Court," (with conclusion in usual form).

The case is up on exceptions. These go (1) to certain portions of the judge's charge to the jury; (2) to the refusal of requests to charge the jury; (3) to the overruling of a motion made at the close of the evidence; for the direction of a verdict, (4) to the denial, after verdict, of a motion in arrest of judgment.

For the sake of convenience, the question of law which the ex-

ception to the refusal to direct raises, will be considered first. The motion apparently was made upon the ground that a verdict for the government would be unsupported by sufficient evidence. Assuming the integrity of the premise, contention that the motion ought to have been granted is sound. There is, however, a fault in the premise. The record — a jury could have found — demonstrated beyond a reasonable doubt, that around six o'clock in the afternoon of April 15, 1932, the respondent, having been told that some prisoners had just escaped, drove to the jail in an automobile; and, about four hours later, the presence of the respondent with the two prisoners mentioned in the indictment, on a side road, some seven or eight miles away, the three being engaged in assisting the owner of an automobile mired in the road in extricating it,— the car being ahead of that of the respondent, which also was mired.

The essence of the indictment, at this state, is compressed into feloniously aiding and assisting prisoners who had escaped, to escape and go at large.

"Aiding an escape is any overt act which is intended to assist, and which is useful to assist, an attempted or completed departure of a prisoner from lawful custody before he is discharged by due process of law." 21 C. J., 827.

The case against the respondent, with reference to the factual situation, was entirely one for the determination of the jury. The respondent takes nothing by this exception.

Exception to the overruling of the motion in arrest shall have attention next. Exception will lie, where error appears on the face of the record, notwithstanding that the question might have been sooner raised in a different way. *State* v. *McCormick*, 84 Me., 566, 24 A., 938; *State* v. *Crouse*, 117 Me., 363, 104 A., 525; *State* v. *Beattie*, 129 Me., 229, 151 A., 427; *State* v. *Kopelow*, 126 Me., 384, 138 A. 625; *State* v. *Berry*, 112 Me., 501, 92 A., 619. The motion contained seven objections to the indictment, each insisted as founded upon a defect; in some instances, two objections made a similar point.

The first and second objections, in substance and in necessary effect, are that, though the indictment alleges that prisoners who had escaped from lawful imprisonment were feloniously aided and assisted to escape and go at large, yet there is absence of averment

of the ingredient of design, on the part of the respondent, to aid and assist such prisoners. It is argued with emphasis that as the statute used the term, "design" means "intent," or "of purpose," and that all these words essentially imply premeditation.

"If the intention with which an act is done be material to constitute the offense charged, such intention must be truly laid in the indictment; and it must be laid positively; and the want of a direct allegation of anything material, in the description of the substance, nature, or manner of the offense, cannot be supplied by any intendment or implication whatsoever." *Com.* v. *Shaw*, 7 Met., 52, 57. Every element of the offense intended to be charged should be set out in the indictment. *State* v. *Paul*, 69 Me., 215; *State* v. *Perley*, 86 Me., 427, 30 A., 74; *State* v. *Beattie*, supra. An indictment, it has been said, must define the particular wrongful act with such certainty that a presumptively innocent man, seeking to know what he must meet, may ascertain fully therefrom the matter laid against him. *Harden* v. *State* (Texas), 211 S. W., 233, 4 A. L. R., 1308.

Indictments should be drawn with care and exactness. For instance, an indictment for bribing a public officer should sufficiently show that the person bribed was acting as an officer, and the fact that the bribing one knew he was dealing with an officer; otherwise, the necessary intent would not sufficiently appear. *State* v. *Beattie*, supra.

The prosecutor recognizes the existence of rules of criminal pleading; not in the spirit of formal concession to an archaic procedure, but in the attitude that the State, when its power is concentrated against an individual, can afford to stand by a system — not, as modified by statute, overly technical — which in the long run has served organized society fairly well.

He frankly concedes that in a criminal statute the word "design" means "intendment" or "purpose." He urges that want of incorporation of that word, in laying accusation, is not fatal if there are other words, or group of words, which are synonymous or can be substituted for the lacking word.

So far, so good; the trouble is that the indictment has no other words expressing the same idea.

The use of the word "feloniously" is not a sufficient allegation of

criminal design. "Feloniously" describes the grade of the act rather than the act which constitutes the offense. It does not imply a specific design; it is not a distinct element of a crime. *State* v. *Doran,* 99 Me., 329, 333.

Nor will the averment of *contra forman statuti* aid an indictment defective in not charging with requisite precision an offense legally punishable. *Com.* v. *Morse,* 2 Mass., 128.

Upon the point of the first objection, and that of the second objection — (the two involving one legal proposition,) — in the exception to the refusal to direct, objection was tenable. Whether any other point this exception makes, or, for that matter, whether any of the other exceptions, be well founded or ill, is of no practical concern. These, at best, now present but academic questions.

This is the decision of this Court. The exception to the refusal to direct is overruled; the exception to the denial of motion in arrest is sustained, for the reason stated earlier in this opinion. In such connection, judgment of conviction and sentence on the verdict of the jury is arrested; any other point in this exception is dismissed without consideration. The exceptions to the charge, and to the refusal of requests to charge, are likewise dismissed.

Let there be mandate accordingly.

*So ordered.*